

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS

## AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

Honorable Geo. A. Hight, Chief Accountant
Board of County and District Road Indebtedness
Austin, Texas

Dear Sir:

> Opinion Number O-4255
> Re: Duty of Board of County and
> District Road Indebtedness to
> approve bonds sold by a county
> under the provisions of the so-
> called "Liberty County Rider"
> of H. B. 688 of the Forty-sixth
> Legislature, Regular Session,
> and H. B. 6 of the Forty-seventh
> Legislature, First Called Session.

We have your letter of December 2, requesting our opinion on the following question:

> "Is it the duty of the Board of County
> and District Road Indebtedness to approve
> interest rates and maturities of bonds sold
> by a county under the provisions of the so-
> called "Liberty County Rider" of H. B. 688,
> the sale of which was contracted for under
> H. B. 688, but the bonds not delivered until
> H. B. 6 had become effective?"

The provisions of the two mentioned laws to which you refer read as follows:

H. B. 688, paragraph 3, subsection (a) of Section 6 —

> "In addition to and regardless of the other
> provisions of this Act, all bonds voted by a
> county prior to January 2, 1939, insofar as
> amounts of same were or may be issued and the

NO COMMUNICATION IS TO BE CONSTRUED AS A DEPARTMENTAL OPINION UNLESS APPROVED BY THE ATTORNEY GENERAL OR FIRST ASSISTANT

272

proceeds actually expended in the construction of roads which are a part of the designated system of State Highways, shall be eligible to participate in the distribution of the moneys coming into said County and Road District Highway Fund the same as provided for other bonds under this Act and as of the date of the designation of said road as a part of the State System; and where such bonds were voted prior to the designation of the road as a State Highway, the county may issue and spend the proceeds on the construction of such road under contract and specifications to be approved by the State Highway Department, and when so expended the bonds shall be eligible to participate in the County and Road District Highway Fund the same as if the bonds were issued and expended prior to January 2, 1939."

H. B. 6, paragraph 4, subsection (a), Section 6:

"In addition to and regardless of the other provisions of this Act, all bonds, warrants or other legal evidences of indebtedness voted, or issued without being voted by a county, road district or defined road district prior to January 2, 1939, insofar as amounts of same were or may be issued and the proceeds actually expended in the construction of roads which are now a part of the designated System of State Highways or which have since, or which may hereafter become a part of the designated System of State Highways shall be eligible to participate in the distribution of the moneys coming into said County and Road District Highway Fund the same as provided for other bonds under this Act and as of the date of the designation of said road as a part of the State Highway System; and where such bonds or warrants were voted prior to January 2, 1939, and prior to the designation of the road as a State Highway and which have not yet been issued or expended, the county or defined road district may issue such bonds or warrants

or other legal evidence of indebtedness and place the proceeds in escrow with the State Highway Commission for the construction of such road under plans, contracts, specifications and supervision of the State Highway Department and when so expended the bonds, warrants or other evidences of indebtedness shall be eligible to participate in the County and Road District Highway Fund the same as if the bonds had been issued and expended prior to January 2, 1939. Provided, further that all such bonds or warrants to be hereafter sold pursuant to this paragraph by a county or defined road district which will be eligible for participation in the County and Road District Highway Fund under the provisions of this Section shall be sold subject to the approval of the Board of County and District Road Indebtedness, as to amounts, maturities and interest rates."

It will be noted that the provision of H. B. 688, above quoted, contains no provision as to manner in which such bonds shall be sold. It appears that only expenditure of such funds should be supervised and that supervision was conferred upon the State Highway Department.

This same provision was carried forward in H. B. 6 with only two material changes, one of which is with reference to the escrowing of funds obtained from the sale of such bonds and the other change appears in the following quoted language:

"Provided further that all such bonds or warrants to be hereafter sold pursuant to this paragraph by a county or defined road district, which will be eligible for participation in the County and Road District Highway Fund under the provisions of this section, shall be sold subject to the approval of the Board of County and District Road Indebtedness as to the amounts, maturities and interest rates." (Underscoring ours.)

Honorable Geo. A. Hight, page #4

We think unquestionably that it is now the duty of the Board to pass upon and approve all bonds which will become eligible under H. B. 6 with reference to the amount, maturity and interest rate. The underscored portion of the above quoted section of the law states that all such bonds hereafter sold pursuant to this paragraph which will be eligible for participation shall be sold subject to the approval of the Board. This legislative command does not appear in H. B. 688 of the Forty-sixth Legislature, Regular Session.

Presupposing a bona fide contract of sale of bonds under the provisions of H. B. 688, we conclude that H. B. 6, Forty-seventh Legislature, First Called Session, could not legally affect any contractual right arising under a prior law, and the fact that such bonds were not actually delivered prior to the effective date of H. B. 6, would, in our opinion, have no bearing upon the legality of such contract.

The duty to approve such bonds was not imposed upon the Board until the adoption of H. B. 6, and it is specifically provided that all bonds sold after the adoption of such law which would become eligible for participation should be sold only upon approval by the Board. The bonds sold under H. B. 688, of course, antedates the enactment of the law imposing this duty upon the Board, and would not be subject to the approval of the Board, and clearly the Board's duty to approve them did not then exist.

You are, therefore, advised that in our opinion the Board is under no duty to approve interest rates and maturities of bonds sold by a county under the provisions of the so-called "Liberty County Rider" of H. B. 688, although delivery of such bonds is not made until after the effective date of H. B. 6.

Trusting that the foregoing satisfactorily answers your inquiry, we are

APPROVED DEC 18, 1941

FIRST ASSISTANT
ATTORNEY GENERAL

CEC-s

Yours very truly

ATTORNEY GENERAL OF TEXAS

By Clarence E. Crow
Clarence E. Crow
Assistant

APPROVED
OPINION
COMMITTEE
BY BCOB
CHAIRMAN